**Reversed and Rendered and Opinion filed June 5, 2014.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-13-01047-CV

### COLLEGE OF THE MAINLAND, Appellant

### V.

### BRUCE GLOVER, Appellee

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 13-CV-0115**

## OPINION

This is a case of alleged gender discrimination. Bruce Glover claims that his employer, the College of the Mainland (the "College"), gave preferential treatment to female colleagues in matters concerning their compensation. The College moved to dismiss, claiming that the trial court lacked jurisdiction because Glover had not timely pursued his administrative remedies. On alternative grounds, the College also argued that the court lacked jurisdiction because Glover had failed to establish a prima facie case of discrimination. The trial court denied the motion, having

rejected both of the College's theories. We agree with the College's second theory that Glover did not establish a prima facie case of discrimination. Accordingly, we reverse and render judgment dismissing Glover's suit.

## BACKGROUND

The College hired Glover as an assistant professor in 2001. At that time, the salaries for all faculty members were determined by two factors. The first factor focused on the professor's level of educational attainment. Professors with a doctorate or its equivalent were placed on one pay scale with a high rate of pay. Professors with anything less than a doctorate were placed on an alternate pay scale with a lower rate of pay. The College did not recognize any difference between those professors with a master's, bachelor's, or associate's degree. For purposes of determining their pay rate, the College simply grouped these professors together.

The second factor in salary determinations was the length of the professor's contract. All professors were employed at the College on a term basis, and terms lasted either 9 months, 10.5 months, or 12 months. A professor's annual base salary was calculated using both factors considered together, rate of pay and term length.

The College instituted additional guidelines for adjusting a professor's salary. The guidelines provided that new hires could receive an initial adjustment above their base pay, up to 10%, depending on the length of their previous experience. The guidelines further stated that all professors could expect a 2% increase in salary after each year of service, not to exceed a predetermined maximum.

In 2007, the College restructured its pay scales to address certain budgetary constraints and to more closely align faculty salaries with academic credentials. Under the new system, which is still in effect today, the College recognizes four levels of educational attainment, each corresponding with a different university degree: associate's, bachelor's, master's, and doctorate. The College identifies these degrees as horizontal "bands" on its pay scales, and each professor is assigned to one band based on the highest degree he or she has obtained.

Along each horizontal band are vertical "steps" ranging from Step 1 to Step 17. A professor's step is determined by his or her experience. New hires start at Step 1 and work their way up. The higher the step, the greater the rate of pay. Likewise, as the level of educational attainment increases, so does the potential for more pay. Consistent with the College's former pay system, a professor's annual salary is still fixed according to his or her length of contract.

The College moved all of its professors to the new pay scales in 2007, when the system was first implemented. During the transition process, the College took appropriate measures to ensure that all returning employees were assigned to a band and a step that paid them at a rate equal to or greater than the rate from the previous year. Glover was placed on the "FM" band, which is reserved for faculty members possessing a master's degree or its equivalent. Because of Glover's previous salary, he was assigned to Step 4 along this band. Glover was also awarded a 12-month contract for the 2007–2008 academic school year. Based on these criteria, the pay scales determined that Glover was to be compensated with an annual salary of more than 3% from the previous year.

Two female comparators, whom we identify as F.O. and C.J., teach in the same department as Glover. F.O. began teaching at the College in 1997, four years before Glover was first hired. C.J. started three years before that, meaning that she

has seven more years of teaching experience than Glover. When the new pay scales were implemented, F.O. was assigned to Step 10 on the "FA" band, which is reserved for faculty members with no greater than an associate's degree or its equivalent. C.J. was assigned to Step 5 of the FM band, one step above Glover. Because C.J. and Glover had the same level of educational attainment, C.J.'s higher step entitled her to a pay rate that was slightly greater than Glover's. F.O.'s pay rate was less than Glover's, despite her higher step, because the FA band provided the lowest measures of faculty compensation.

F.O. and C.J. each enjoyed relative pay increases when the College moved to the new pay system. Like Glover, they both experienced raises of more than 3% from the previous year. Despite these increases, both comparators saw reductions in their annual salaries because the College shortened the terms of their contracts from 10.5 months to 9 months. Since 2007, Glover has always had a greater contract term than both F.O. and C.J. Similarly, Glover's annual base salary has always exceeded that of both comparators.

After implementing the new pay system, the College made several positive adjustments in pay for each professor. Glover was elevated to Step 5 in 2008, and to Step 6 in 2009, where he has remained ever since. As of 2010, F.O. has been at Step 12. C.J. filed a grievance in 2008 relating to her pay, and the College elevated her two steps to Step 7. She has been at Step 9 since 2010. Glover filed a similar grievance in 2012, but he requested an elevation to Step 15. When the College offered him only a single-step increase, Glover rejected the adjustment.

In October of 2012, Glover filed a charge of discrimination with the EEOC, claiming that he had been "incorrectly placed on the salary classification scale." Glover compared himself directly with F.O., rather than C.J., in his administrative complaint. Glover noted that he and F.O. each had the same faculty position and

4

teaching load, yet F.O. was assigned to a much higher step. Glover opined that his gender was the only possible reason for having a lower step. Glover did not acknowledge the differences in educational attainment and how such differences impact the rate of pay under the College's pay scales. Glover also omitted mentioning that his annual base salary was higher than F.O.'s.

The EEOC dismissed Glover's charge, having found no evidence of actionable discrimination. Glover then filed this lawsuit, complaining in general terms that the College had treated women more favorably than men in the setting of faculty wages. No female comparators were named in the petition.

The College filed a motion for summary judgment and asked the court to dismiss the suit for want of jurisdiction. The College cited the strict requirements of the Texas Commission on Human Rights Act (the "TCHRA"), which mandates that a charge of discrimination be filed within 180 days of an alleged unlawful employment practice. The College argued that the alleged unlawful employment practice occurred in 2009, when the College last adjusted Glover's step. Because this preceded the date that Glover filed his charge by more than three years, the College contended that the trial court was deprived of jurisdiction.

On alternative grounds, the College argued that it was entitled to judgment because Glover had also failed to demonstrate a prima facie case of discrimination. The College argued that Glover's claim must fail because Glover actually had a higher salary than F.O., the only female comparator identified in his charge of discrimination. The College also argued that Glover and F.O. were not similarly situated because F.O. had more teaching experience than Glover.

Glover amended his pleadings to expand on his claim of disparate treatment, as well as to remove a cause of action not relevant here. Glover explained that the College had deviated from the pay plan on an ad hoc basis, all to achieve desired

personnel decisions in favor of female faculty members. Once again, Glover did not identify any comparators by name.

Glover then filed a response to the College's motion for summary judgment. Disputing the jurisdictional bar, Glover argued that it was not the setting of his pay that triggered his discrimination complaint, but rather the "subsequent" decisions of the College to give preferential treatment to his female colleagues. Glover did not identify the dates of these alleged instances, but he did name F.O. and C.J., alleging they were the beneficiaries of the disparate treatment. Glover also argued that his charge of discrimination was timely because of the "continuing violation" doctrine. He explained that the deadline to file his charge was subject to equitable tolling because the College had hidden vital information that prevented him from discovering the discrimination.

Glover also argued that he had both direct and indirect evidence of gender discrimination. Glover complained that F.O. had been placed on the FA band when she did not possess an associate's degree or its equivalent. He also complained that C.J. had advanced two steps on the FM band "in clear contravention of the stated rules for placement on the salary scale." Both actions, in Glover's view, demonstrated the College's more favorable disposition towards female faculty members.

The College filed a reply objecting to the use of C.J. as a comparator, who had not been identified in either the charge of discrimination or the original petition. The College also disputed Glover's attempts to avoid the strict statute of limitations imposed by the TCHRA. The trial court denied the College's motion, prompting this interlocutory appeal.

6

## APPELLATE JURISDICTION

Generally, appeals may be taken only from final judgments or orders. *See Lehmann v. Har-Conn Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Section 51.014(a)(8) of the Civil Practice and Remedies Code provides an exception to this rule by allowing an appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit." There is no dispute that the College, as a public junior college district, is a "governmental unit." *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(B); Tex. Educ. Code § 130.174.

The trial court denied a pleading that was styled as a traditional motion for summary judgment, rather than as a plea to the jurisdiction. However, the style of a pleading does not strictly determine its character. *See* Tex. R. Civ. P. 71; *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). When assessing our jurisdiction under Section 51.014(a)(8), we must also consider the substance of the plea for relief. *See Lazarides v. Farris*, 367 S.W.3d 788, 796–97 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because the College moved for summary judgment on jurisdictional grounds, we will treat the College's motion as a plea to the jurisdiction. *Id.* The trial court having denied the plea, we conclude that we have jurisdiction to consider this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (interlocutory appeal available whenever a trial court denies a governmental unit's challenge to subject matter jurisdiction, "irrespective of the procedural vehicle used").

## ISSUES PRESENTED

The College raises two issues. In its first issue, the College argues that Glover filed an untimely charge of discrimination. Because the exhaustion of administrative remedies is a statutory prerequisite to suit, the College contends that

we must dismiss for want of jurisdiction. In its second issue, the College contends that the trial court lacked jurisdiction because Glover failed to demonstrate a prima facie case of discrimination. We only consider this second issue.

## STANDARD OF REVIEW

As a political subdivision of the state, the College is immune from suit absent an express waiver of governmental immunity. *See College of the Mainland v. Meneke*, 420 S.W.3d 865, 868 (Tex. App.—Houston [14th Dist.] 2014, no pet.). One such waiver can be found under the TCHRA, which provides that an employer may not, on the basis of sex, discriminate in any manner against an employee in connection with compensation or the terms, conditions, or privileges of employment. *See* Tex. Lab. Code § 21.051; *Mission Consol. Indep. Sch. Distr. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) ("*Garcia I*") (holding that "the TCHRA clearly and unambiguously waives immunity").

The TCHRA's waiver of immunity only applies in those suits where the plaintiff actually alleges a violation within the scope of the statute. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012) ("*Garcia II*"). If the plaintiff does not sufficiently plead facts that state a claim under the TCHRA, the governmental unit may challenge the pleadings with a plea to the jurisdiction. *Id.* Using the same procedural device, the governmental unit may also challenge the very existence of those jurisdictional facts. *Id.* at 635.

The elements of a prima facie case are jurisdictional when a governmental unit has been sued. *Id.* at 635–37. If the suit involves claims of disparate treatment, the prima facie case requires proof that the discrimination claimant was treated less favorably than a similarly situated comparator from the opposing class. *See Univ. of Tex. Med. Branch at Galveston v. Petteway*, 373 S.W.3d 785, 788–89 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The College argues that Glover cannot

8

allege a claim within the scope of the TCHRA because Glover is not similarly situated to his female comparators. Because the failure to demonstrate a prima facie case "means the court has no jurisdiction," the College's plea to the jurisdiction is appropriately construed as a challenge to the existence of jurisdictional facts. *See Garcia II*, 372 S.W.3d at 637.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, a trial court's review of the plea mirrors that of a traditional motion for summary judgment. *Id.* at 635. Initially, the defendant carries the burden to present evidence negating the existence of a jurisdictional fact. *Id.* at 635, 637. If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* at 635. If a fact issue exists, the trial court should deny the plea. *Id.* But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.*

We apply a de novo standard of review to a trial court's ruling on a challenge to its subject matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

Finally, because the legislature intended for state law to correlate with federal law in employment discrimination cases, we may look to analogous federal cases when applying the TCHRA. *See* Tex. Lab. Code § 21.001; *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

## ANALYSIS

There are two methods of proof in cases alleging disparate treatment. The first method involves proving discriminatory intent through direct evidence of what the defendant did and said. *See Garcia II*, 372 S.W.3d at 634. Because direct evidence of discrimination is a "rarity" in employment cases, courts have allowed claims to proceed with only indirect or circumstantial evidence of discrimination. *See Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Under this second method, courts follow the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The *McDonnell Douglas* framework was created to make matters easier for discrimination plaintiffs. *See Garcia II*, 372 S.W.3d at 634. Under this framework, the plaintiff is entitled to a presumption of discrimination if he meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Id.* The precise elements of a prima facie case will vary depending on the circumstances, but the plaintiff's burden at this stage is not supposed to be onerous. *Id.* The *McDonnell Douglas* presumption is "merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence." *See Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999). The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). If the defendant fails to articulate a legitimate, nondiscriminatory reason for the employment decision, then the *McDonnell Douglas* presumption is sufficient to support a finding of liability. *See Garcia II*, 372 S.W.3d at 634.

### A.    There is no direct evidence of discrimination.

Glover contends that a prima facie showing of discrimination is unnecessary because there is direct evidence of disparate treatment—namely, his request for a salary adjustment was denied, whereas a similar request by C.J. was granted. According to Glover, this evidence constitutes direct proof of discrimination because C.J.'s adjustment was done "without explanation or justification," in contravention of a previous statement by College administrators that it would be "inherently unfair" to advance faculty members on the pay scales without reference to stated rules and procedures.

"Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Jesperson v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.). The evidence here does not affirmatively reflect that Glover was denied a salary adjustment on the basis of discriminatory animus. There is no evidence that the College refused Glover's request because he is male, or that C.J. received her adjustment because she is female. Even Glover recognizes in his brief that C.J.'s adjustment was done "without explanation."

The evidence cited by Glover would not support a claim of discrimination under the TCHRA without an inference or presumption that the College treated Glover and C.J. differently on account of their sex. We accordingly conclude that there is no evidence of direct discrimination.

### B.    Glover did not establish a prima facie case of discrimination.

In the absence of direct evidence of discrimination, Glover must establish a prima facie case of discrimination under the *McDonnell Douglas* framework. For claims of disparate treatment, a prima facie case is made by showing that the

11

plaintiff (1) is a member of a protected class, (2) was qualified for his or her position, (3) was subject to an adverse employment decision, and (4) was treated less favorably than similarly situated persons not in the protected class. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Navy v. College of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.). There is no dispute that Glover was qualified for his job and that, as a male, he is a member of a protected class. Furthermore, there is no dispute that Glover suffered an adverse employment decision when his request for a step increase was rejected. The sole issue is whether Glover satisfied the fourth element with respect to F.O. and C.J., the only female comparators identified in his summary judgment response.

### 1. Glover is not similarly situated to F.O.

Even though Glover makes more money than F.O., and has for the last several years, Glover contends that the College has discriminated against him on account of his gender. Glover bases his complaint on F.O.'s higher step on the FA band. Glover contends that F.O. has advanced at a faster rate on the College's pay scales, solely because she is a woman. The College responds that this claim of discrimination must fail because, even if he was treated less favorably, Glover cannot show that he is similarly situated to F.O.

The Texas Supreme Court has held that "[e]mployees are similarly situated if their circumstances are comparable in all material respects." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). The Fifth Circuit has articulated a similar standard, saying that employees are similarly situated if their circumstances are "nearly identical." *See Perez v. Tex. Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). When

12

applying these standards to cases alleging disparate treatment in terms of pay, the material factors we consider are whether the claimant and comparator have similar levels of experience or education, similar levels of seniority, and similar disciplinary records. *See Cooper v. S. Co.*, 390 F.3d 695, 741, 743, 745 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006).

Glover and F.O. do not have similar levels of educational attainment, which is apparent from their assignments to different horizontal bands. F.O. graduated from the College in 1995 with a "Graphic Arts/Desktop & Electronic Publishing Certificate." There is no indication that she pursued a higher degree either before or after 1997, when she returned to the College as a full-time faculty member. Glover, by contrast, has a master's degree in business administration from Stephen F. Austin State University.

Glover and F.O. are also dissimilar in terms of seniority. Glover started teaching at the College in 2001, four years after F.O. Courts have recognized that employees are not similarly situated when they lack comparable years of service. *See id.* at 743 (prima facie case not shown where comparators were more senior by six years); *Hobbs v. Ketera Techs., Inc.*, 865 F. Supp. 2d 719, 730 (N.D. Tex. 2012) (prima facie case not shown where claimant had been working for the employer for over a year, whereas comparator had been working for approximately six months). Based on their different levels of educational attainment and tenure at the College, we conclude that Glover and F.O. are not similarly situated or "nearly identical." Thus, even if we assumed that Glover was treated less favorably than F.O., Glover has still failed to establish a prima facie case of gender discrimination.

## 2. Glover is not similarly situated to C.J. either.

In his next claim, Glover argues that he was treated less favorably than C.J. because the College granted her request for an adjustment in pay, whereas his request was denied. Since 2007, when the new pay scales were implemented, C.J. has had a higher rate of pay than Glover, but her annual salary has still been lower because of her shorter term contracts. Apparently believing that he is entitled to even more pay than C.J., Glover contends that he has suffered disparate treatment as the result of gender discrimination.

The College did not specifically argue in its plea to the jurisdiction that Glover was not similarly situated to C.J. Instead, the College argued in a reply that C.J. could not be considered as a comparator because she was not named in either the charge of discrimination or the original petition. On appeal, the College asserts for the first time that Glover is not similarly situated to C.J. because C.J. has been teaching for a longer period of time. As we stated above, this argument challenges the existence of jurisdictional facts. On interlocutory appeal, this court must address a defendant's jurisdictional arguments, regardless of whether they were raised in the trial court. *See Dallas Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam); *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Baker*, 401 S.W.3d 246, 262 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). Because the parties have fully briefed the issue here, we now consider their arguments whether Glover and C.J. are similarly situated. If the record conclusively negates this jurisdictional fact, then the suit must be dismissed. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012).

Glover and C.J. are similar in the sense that they each have master's degrees, but their professional experience varies widely. Glover has sixteen more years in "full time industry," whereas C.J. has seven more years of teaching experience.

14

Because of her relative seniority at the College, C.J. has accrued a higher rate of pay over the years. That pay rate was maintained when the College implemented its new pay scales in 2007.

Consistent with our previous analysis with respect to F.O., we conclude that Glover and C.J. are not similarly situated. Glover's tenure at the College is shorter than C.J.'s by seven years. Their circumstances are not "nearly identical" for comparison purposes. *See Cooper*, 390 F.3d at 743.

## CONCLUSION

We sustain the College's second issue that Glover is unable to establish a prima facie case of gender discrimination. In the absence of essential jurisdictional facts, the plea to the jurisdiction must be granted. Therefore, we reverse and render judgment dismissing Glover's suit.

/s/    Tracy Christopher
       Justice

Panel consists of Justices Christopher, Jamison, and McCally.