In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00044-CV**
_____

**HUMAN SERVICES OF SOUTHEAST TEXAS, INC., Appellant**

**V.**

**CASSANDRA GOFFNEY, Appellee**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-197,275**

**MEMORANDUM OPINION**

Cassandra Goffney sued Human Services of Southeast Texas, Inc. d/b/a Spindletop Center (Spindletop) for age and gender discrimination. In this accelerated appeal, Spindletop challenges the trial court's orders denying its plea to the jurisdiction and its traditional and no-evidence motion for summary judgment. *See*

Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2017).[1] In three issues on appeal, Spindletop argues: (1) the trial court erred in denying Spindletop's plea to the jurisdiction because Goffney failed to show a waiver of governmental immunity; (2) the trial court erred in denying Spindletop's no-evidence motion for summary judgment because Goffney failed to present evidence to raise a fact issue regarding one or more of her claims; and (3) the trial court erred in denying Spindletop's motion for summary judgment as Goffney failed to present admissible evidence to show the reasons articulated by Spindletop for her termination are mere pretexts for discrimination.

---

[1] Spindletop filed one motion combining its plea to the jurisdiction, no-evidence motion for summary judgment, and traditional motion for summary judgment. The trial court issued two separate orders, however. One order denied Spindletop's plea to the jurisdiction, and the other order denied its no-evidence and traditional motions for summary judgment. The substance of the arguments contained in Spindletop's motion for summary judgment also implicate jurisdiction, so we consider those as part of our review of Spindletop's plea to the jurisdiction in this interlocutory appeal. *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (instructing interlocutory appeal is available when the trial court denies government's challenge to subject matter jurisdiction, "irrespective of the procedural vehicle used"); *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 390–91 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (noting because appellant moved for summary judgment on jurisdictional grounds, the court would treat the motion as a plea to the jurisdiction).

## Background

Spindletop is a community center providing services for people who have mental illnesses, intellectual disabilities, developmental disabilities, and substance abuse issues. It provides services for Jefferson, Hardin, Orange, and Chambers Counties. It is a unit of local government pursuant to chapter 534 of the Texas Health and Safety Code. *See* Tex. Health & Safety Code Ann. § 534.001(c) (West 2017).

Goffney began working for Spindletop in 1989 as an aide. Over the years, she was promoted several times. Her last promotion came in 2009, when she was promoted to Staff Services Officer. In that position, Goffney testified she was responsible for the food service unit, facility maintenance, state and federal inspections, and acted as Assistant Safety Officer. As Staff Services Officer, Goffney also oversaw the maintenance department, housekeeping, the motor pool, and dealt with outside vendors. Goffney was promoted into that position by Gary Hidalgo, who acted as her supervisor until early 2011, when he retired. Sometime in 2011, Chalonnes Hoover, the Chief Financial Officer, became Goffney's supervisor.

Hoover was responsible for evaluating Goffney's performance.[2] In February of 2011, Hoover completed the first evaluation of Goffney, which was largely

---

[2] Employees at Spindletop were evaluated on their performance every three years.

positive. However, things began to deteriorate thereafter. In September of 2013, Goffney's son was the victim of a violent crime and required extensive medical care at a facility in Houston, Texas. While her son was hospitalized, Goffney worked via laptop and cellphone. Goffney testified she had accumulated a significant amount of paid leave, and she wanted to use that time to care for her son. Goffney claimed Hoover would not sign her timesheets during this period. Goffney further testified Hoover advised her that she would not be allowed to use that time, but instead, would have to take leave under the Family and Medical Leave Act (FMLA). Goffney went to the human resources department to verify the leave policy, and they gave her a number in Washington, D.C. to call. When Goffney called the number, she was reportedly told she could use her paid leave and was not required to take leave under the FMLA. According to Goffney, this upset Hoover, and things between them further deteriorated.

In 2014, Hoover received numerous complaints about Goffney's behavior on the job. The complaints came from Spindletop staff as well as outside vendors. These complaints included Spindletop staff allegations that Goffney was belittling, demeaning, condescending, and rude. One specific complaint regarding Goffney was that she violated Spindletop's anti-nepotism policy by showing favoritism to her brother-in-law, who worked in the housekeeping department. Goffney gave him

favorable job assignments to the detriment of others within the housekeeping department. As a result of these complaints from staff, Hoover had housekeeping report to her directly and removed that department from Goffney's supervision. There were also complaints about Goffney's behavior from third-party vendors that required intervention by Hoover. In response to those complaints, Hoover no longer allowed Goffney to interact with outside vendors. On July 21, 2014, Hoover verbally reprimanded Goffney and recommended Goffney receive training or counseling to improve her interpersonal skills and management style. Hoover also indicated Goffney's behavior toward staff and vendors undermined her effectiveness as a supervisor.

In June or July of 2014, Hoover recommended the position of Staff Services Officer be eliminated as a reduction in force and consistent with Spindletop's policy. This was done as part of a reorganization of the maintenance department. Specifically, after the decision to move housekeeping under Hoover's supervision, she recommended they do a reorganization of the maintenance department and eliminate the Staff Services Officer position. They eliminated Goffney's position and one Maintenance Technician position, reducing the staff by one full-time equivalent. Under the reorganization, they would have two full-time Maintenance Technicians and a new position of Maintenance Supervisor, who would work half

5

their time in the field and half performing supervisory duties. Hoover made the recommendation and did a cost analysis to show what the financial savings would be. Three Maintenance Technicians were affected by the reduction in force. In her deposition, Hoover explained not all Maintenance Technician positions were eliminated, but because there would only be two positions left, all three technicians received reduction in force letters and had to reapply per human resource policy. Goffney indicated that on the same day she was reprimanded, she received a reduction in force letter stating the position of Staff Services Officer was being eliminated effective August 22, 2014.

Spindletop hired an African-American male who was thirty-nine years of age at the time to fill the job of Maintenance Supervisor. Goffney applied for the position and interviewed, but she was not offered the job. Hoover explained that Goffney had the least amount of hands-on maintenance experience of all the candidates. Additionally, Goffney had been disciplined for being rude to the staff and outside vendors. Hoover indicated the individual they hired had advanced mechanical skills including the ability to work on electrical, plumbing, and mechanical units. Hoover asserted the most qualified candidate for the job was hired.

In 2015, Goffney filed a complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission for discrimination based on

race, gender, and age. Ultimately, Goffney sued Spindletop, alleging age discrimination and gender discrimination in violation of the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Labor Code Ann. §§ 21.001, 21.051 (West 2015). Spindletop filed a combined plea to the jurisdiction, no-evidence motion for summary judgment, and traditional motion for summary judgment. The trial court denied all relief sought by Spindletop.

**Standard of Review**

We review a trial court's ruling on a plea to the jurisdiction based on immunity from suit under a *de novo* standard. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A court may not decide a case unless it has subject-matter jurisdiction. *Id.* at 226. A plea to the jurisdiction challenges the trial court's power to exercise subject matter jurisdiction. *Id.*; *see also City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). A plea to the jurisdiction is a dilatory plea typically used to defeat a plaintiff's cause of action without regard to whether the claims have any merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

"Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Miranda*, 133 S.W.3d at 225–26 (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex.

7

1999)). In our review, we examine the factual allegations contained in the pleadings and evidence presented relevant to jurisdiction. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625–26 (Tex. 2010); *Bland*, 34 S.W.3d at 555. When pleadings are challenged by a plea to the jurisdiction, a court must determine if the pleader has alleged facts affirmatively demonstrating the court's jurisdiction, and the court must liberally construe the pleadings. *Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* (citing *Bland*, 34 S.W.3d at 555). In that situation, our review of a plea to the jurisdiction is similar to a traditional motion for summary judgment. *See id.* at 228; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) ("*Garcia II*").

**Analysis**

Governmental units are typically immune from suit. *See Garcia II*, 372 S.W.3d at 636; *Jones*, 8 S.W.3d at 638. This court has noted before that Spindletop Center is a governmental unit generally immune from suit and considered that immunity in the context of a plea to the jurisdiction. *Cf. Spindletop MHMR Ctr. v. Beauchamp*, 130 S.W.3d 368, 369 (Tex. App.—Beaumont 2004, pet. denied)

8

(examining Spindletop's sovereign immunity in the context of the Texas Tort Claims Act). "Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit." *Garcia II*, 372 S.W.3d at 636.

Only when immunity has been waived by statute can a governmental instrumentality be sued. *See id.* One such explicit waiver of immunity is contained in the TCHRA. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) ("*Garcia I*") (holding "the TCHRA clearly and unambiguously waives immunity"). The TCHRA prohibits discrimination based upon "race, color, disability, religion, sex, national origin, or age[.]" Tex. Labor Code Ann. § 21.051; *Garcia II*, 372 S.W.3d at 633; *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). The TCHRA's immunity waiver applies only in suits where the plaintiff alleges a violation within the scope of the statute. *Garcia II*, 372 S.W.3d at 636; *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 391 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "In a suit against a governmental employer, the prima facie case implicates both the merits of the claim *and* the court's jurisdiction because of the doctrine of sovereign immunity." *Garcia II*, 372 S.W.3d at 635–36 (citing *Miranda*, 133 S.W.3d at 228). To invoke the trial court's jurisdiction and overcome

9

the typical rule of immunity from suit, a plaintiff is required to make out a prima facie case of discrimination. *See id.*

The prima facie case requirement and its accompanying burden-shifting mechanism is not explicitly stated in the TCHRA; rather, it was outlined by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). The burden-shifting framework outlined in *McDonnell Douglas* has been consistently applied to the TCHRA by Texas courts. *See Garcia II*, 372 S.W.3d at 638. Because section 21.051 is similar to Title VII, we may look to federal law and its application for guidance on issues of discrimination. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475–76 (Tex. 2001). If a plaintiff makes out a prima facie case of discrimination, the burden then shifts to the defendant to provide evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 477. Once a defendant provides a legitimate non-discriminatory reason for its actions, the burden then shifts back to the plaintiff to show the employer's proffered reasons were pretextual. *Id.*

In the case before us, Goffney alleged Spindletop discriminated against her based on age and gender.[3] Following her termination due to a reduction in force,

_____

[3] In addition to other purported misconduct, Goffney specifically complains about alleged comments made by Hoover in late 2010 or early 2011, including the statement that "typically males do this type of work" and asking Goffney why she

10

Goffney complains Spindletop's refusal to hire her as the Maintenance Supervisor amounts to discrimination based on her age and gender, and she asserts that she was qualified for the position.[4] Accordingly, we will look to each one of these to determine if the trial court's subject matter jurisdiction has been invoked.

To establish a prima facie age or gender discrimination case under the TCHRA, Goffney was required to prove the following: that she was (1) a member

---

wanted a particular job. Hoover did not recall making these remarks, but she did admit to telling Goffney she was in a man's world. Hoover explained the comment was made in the context of counseling Goffney regarding her need to be less demeaning after overhearing Goffney berate a male employee. We note these remarks were remote in time (made over three years prior to Goffney's termination), unrelated to the employee's protected class, and unrelated to the employment decision at issue. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 593 (Tex. 2008). If true, these statements are nothing more than stray remarks, and as such, are insufficient to establish discrimination. *See id.* at 592. Direct evidence of discrimination is evidence that, if believed, proves discriminatory animus without inference. *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.). There is no evidence Goffney was told she was not hired because she was a woman. *See id.* at 654; *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000). Absent direct evidence of discrimination, Goffney was required to proceed under the burden-shifting framework of *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012) ("*Garcia II*").

[4] Goffney includes allegations that she applied for and was not hired for a Custodial Manager position in the factual background of her petition, but this complaint is not included in her causes of action for age and gender discrimination, in which she only raises allegations about the Maintenance Supervisor position. Moreover, the individual hired for the Custodial Manager was an African-American female over forty and would be a member of the same protected classes as Goffney. Accordingly, we do not address these allegations relating to the Custodial Manager in our analysis.

11

of the protected class; (2) qualified for her employment position; (3) terminated by the employer or suffered some adverse employment action; and (4) replaced by someone outside the protected class or others similarly situated were treated more favorably. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Garcia II*, 372 S.W.3d at 632; *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008); *Monarrez*, 177 S.W.3d at 917.

In the present case, Goffney fails to make out a prima facie case of age or gender discrimination. It is clear that Goffney meets the first three requisite elements for purposes of demonstrating a prima facie case of age and gender discrimination. *See Garcia II*, 372 S.W.3d at 632; *Reyes*, 272 S.W.3d at 592; *Monarrez*, 177 S.W.3d at 917. She is a female over the age of forty, and for purposes of each claim falls into a protected class. *See* Tex. Labor Code Ann. § 21.051. She was qualified for the position of Staff Services Officer, although she had experienced difficulties complying with company policies and procedures. There was evidence she violated Spindletop's anti-nepotism policy by assigning favorable work assignments to a relative to the detriment of other staff and was disciplined as a result. There was also evidence Goffney was disciplined for unprofessional interactions with staff and outside vendors which required the intervention of her supervisor, Hoover. These issues with her performance led to Hoover removing housekeeping and outside

vendors from Goffney's purview. Goffney was ultimately terminated as part of a reduction in force. Of the individuals subject to the reduction in force, Goffney was the only one who was not re-hired to another position with Spindletop.

Goffney is unable to establish the fourth element of her prima facie case, however, which requires that she be replaced by someone outside the protected class or that others similarly situated were treated more favorably. *See Garcia II*, 372 S.W.3d at 632, 638; *Monarrez*, 177 S.W.3d at 917. It is unclear from Goffney's pleading and briefing whether she is arguing she was replaced by someone outside the protected class or that someone similarly situated, but outside the protected class, was treated more favorably. We will go through an analysis of each. "[A] terminated employee is replaced by another person when the terminated employee's position is filled by that person and said person is assigned to the terminated employee's former job duties." *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 436 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Baker v. Gregg Cty.*, 33 S.W.3d 72, 81 (Tex. App.—Texarkana 2000, pet. dism'd)). In *Baker*, the Texarkana Court of Appeals explained:

> [A] terminated employee is not replaced by a person who temporarily assumes the terminated employee's job duties or a person who only takes over a part of those duties. When a terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee.

13

*See* 33 S.W.3d at 81–82. The evidence showed there would no longer be a Staff Services Officer position over maintenance and housekeeping. There would be two new positions, one of Maintenance Supervisor and one of Custodial Manager that would split those duties. Moreover, the Maintenance Supervisor position differed from the job Goffney previously held. The new position required the Maintenance Supervisor to spend half of their time out in the field working and performing repairs and the other half performing supervisory duties. Indeed, the man they hired testified he did not do what Goffney did. He testified he supervises, but he is also constantly working in the field, and it is not an office position. While the position of Maintenance Supervisor was given to a male who was thirty-nine at the time of hiring, the position was distinct from the one that Goffney held. Accordingly, she cannot establish she was replaced by someone outside the protected class. *See Russo*, 93 S.W.3d at 436; *Baker*, 33 S.W.3d at 81–82.

Alternatively, Goffney cannot show Spindletop treated others similarly situated but outside of the protected class more favorably by refusing to hire her for the Maintenance Supervisor position. *See Monarrez*, 177 S.W.3d at 917–18. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Id.* at 917. The Fifth Circuit has stated that employees are similarly situated if their

14

circumstances are "nearly identical." *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Some factors courts have looked to in determining whether individuals are similarly situated include whether the claimant and comparator have similar levels of experience or education, similar levels of seniority, and similar disciplinary records. *Glover*, 436 S.W.3d at 393 (considering "similarly situated" in the context of a disparate treatment case involving pay). Although the individual hired for the Maintenance Supervisor position was outside the protected class, he was not similarly situated. *See id.*; *see also Monarrez*, 177 S.W.3d at 917. Hoover testified in her affidavit that all other applicants were previously Maintenance Technicians, and Goffney had the least amount of maintenance experience of any of the applicants for the job. Further, Hoover testified the individual Spindletop hired had advanced maintenance and repair skills, which made him qualified for a position requiring half of his time be spent in the field. Finally, the evidence is clear Goffney had difficulty interacting with other staff and outside vendors and was disciplined for those issues. There is no evidence the individual Spindletop hired had any disciplinary record at all. Accordingly, Goffney cannot show her comparator outside of the protected class was "similarly situated." *See Monarrez*, 177 S.W.3d at 917.

15

Goffney's failure to establish the fourth required element of her age and gender discrimination claims necessarily means that she cannot make a prima facie case. *See id.*; *Garcia II*, 372 S.W.3d at 632. "[T]he prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA." *Garcia II*, 372 S.W.3d at 637. In a suit against a governmental employer, the prima facie case implicates the merits and the court's jurisdiction due to sovereign immunity. *Id.* at 635–36. Goffney's failure to establish a prima facie case of age or gender discrimination means the trial court lacks jurisdiction and improperly denied Spindletop's plea to the jurisdiction.

Because of our disposition of this issue, we only reach the jurisdictional arguments in this case, whether couched as a plea to the jurisdiction or summary judgment.

## Conclusion

We conclude Goffney has not presented a prima facie case of age or gender discrimination that would trigger the trial court's jurisdiction under the TCHRA. Having sustained Spindletop's issues, we reverse the trial court's order denying Spindletop's plea to the jurisdiction, render judgment in favor of Spindletop, and dismiss Goffney's claims with prejudice.

REVERSED and RENDERED.

 

_____
CHARLES KREGER
Justice

Submitted on June 27, 2018
Opinion Delivered September 27, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.