

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00176-CV

———————————————

TARRANT COUNTY COLLEGE DISTRICT, Appellant

V.

DIDIER CHAVEZ, Appellee

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-360359-24

---

Before Sudderth, C.J.; Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

## I. INTRODUCTION

Following Appellant Tarrant County College District (TCCD)'s termination of his employment, Appellee Didier Chavez sued TCCD under the Texas Commission on Human Rights Act (TCHRA) for (1) sex discrimination and (2) retaliation. *See* Tex. Lab. Code Ann. § 21.001. Contending that its governmental immunity had not been waived because Chavez could not raise a genuine issue of material fact that it had violated the TCHRA, TCCD moved to dismiss the suit.[1] The trial court denied the motion, and TCCD filed this appeal.

In a sole issue, TCCD argues—in two subparts—that the trial court erred by denying its motion to dismiss because Chavez failed to (1) establish a prima facie case of sex discrimination and (2) overcome TCCD's rebuttal evidence by showing that its stated reason for the termination of his employment was a mere pretext.

Because Chavez established his prima facie case for sex discrimination and because he raised a fact issue whether TCCD's stated reason for the termination of his employment was a mere pretext for discrimination, the trial court did not err by denying TCCD's motion to dismiss. We will affirm.

---

[1]TCCD's motion to dismiss was a plea to the jurisdiction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Chavez was employed by TCCD as a library specialist from October 2021 through July 2023. During his employment with TCCD, Chavez had several negative encounters with two female coworkers: Amy Vo and Kristen Smith. Vo and Smith made various discrimination-related comments—both in Chavez's presence and directed at him. Their comments included Chavez allegedly receiving special treatment because he is a man, how easy men have it, and how men have everything handed to them.

In March 2023, a conversation regarding misogyny between Chavez, Vo, and Smith became contentious when Vo said that "men are all rapists, murderers, and monsters." Chavez construed this statement as discrimination and harassment, and he reported Vo to TCCD's Director of Library Services, Alex Potemkin, who escalated the complaint to TCCD's Human Resources Department. Chavez also made a formal Incident Report to TCCD, reporting that Vo had been spreading misandry towards him and his other male coworkers. In that complaint, Chavez reported Smith's involvement and alleged that she and Vo were "openly rude and mean to all of the male coworkers." Chavez complained that the pattern of discrimination and harassment towards him and his male coworkers had escalated despite his speaking to Vo and Smith about their statements.

Following Chavez's complaint, TCCD reduced Smith's work hours until a meeting could take place to discuss the reported conflicts. Later that day, another

female coworker, Dayna Gerard, confronted Chavez—in front of other coworkers—about his discrimination complaint and accused him of being responsible for the reduction of Smith's work hours. The next day, Gerard sent Chavez a text message and asked if they could talk after work. Gerard and Chavez met later that evening, and Gerard explained that she was upset that he had complained of discrimination and told him that he should have personally handled it with Vo and Smith instead of putting their jobs at risk. Both Chavez and Gerard recorded the conversation without the other's knowledge or consent. TCCD's Employee Standards of Conduct prohibit its employees from recording other employees without their consent.

Chavez sent the recorded conversation to Potemkin, who responded that he "cannot advise [Chavez] in any capacity as to what to do with the recordings, other than to add them to the complaint." Chavez provided the recording to Human Resources and made a second complaint to TCCD, alleging that Gerard had retaliated against him. Chavez reported that Gerard had publicly questioned him at work about his complaint to Potemkin.

On April 28, 2023, during an investigation into Chavez's discrimination and retaliation complaints, Gerard spoke with a Title IX investigator and admitted that she had recorded a conversation between her and Chavez.[2]

---

[2]TCCD's Title IX Office investigated Chavez's sex discrimination and retaliation complaints.

4

On June 7, 2023, following an investigation into the claims submitted by Chavez, a confidential report was completed, indicating that no Title IX violations had been found and that the matter would be transferred to Human Resources to determine whether any non-Title IX violations had occurred. A few days later, Chavez was placed on administrative leave, pending Human Resource's investigation into his complaints. Gerard was placed on administrative leave on June 13, 2023. Human Resources completed its investigation into Chavez's complaints on July 10, 2023. TCCD's investigation revealed that Chavez had "made an audio recording of a co-worker without her consent"—in violation of TCCD's Employee Standards of Conduct. Seventeen days later, Chavez's employment was terminated. Gerard's employment, however, was not terminated at that time.

On August 28, 2023, Chavez made a complaint to the Equal Employment Opportunity Commission (EEOC), asserting that he was "discriminated against and harassed because of [his] sex (male)" and that he "was also retaliated against for engaging in protected activity." On September 29, 2023, TCCD amended its investigative report to confirm that Gerard had also recorded a conversation with Chavez without his consent, stating that "[t]his fact was inadvertently omitted from the initial investigative summary completed on July 10, 2023." On October 2, 2023, TCCD responded to Chavez's EEOC complaint, maintaining that his complaints of discrimination and retaliation should fail. On October 17, 2023, TCCD placed

Gerard on administrative leave and subsequently terminated her employment on December 11, 2023.

On December 16, 2023, Chavez sued TCCD, asserting claims under the TCHRA for sex discrimination and retaliation. TCCD filed a motion to dismiss, contending that the trial court lacked jurisdiction over Chavez's claims because he could not raise a genuine issue of material fact that TCCD had violated the TCHRA. Chavez responded and argued that his petition and the evidence presented by both parties were sufficient to establish his prima facie case for each claim asserted and to rebut TCCD's nondiscriminatory reason for the termination of his employment. Following a non-evidentiary hearing, the trial court denied the motion to dismiss, and TCCD filed this appeal.

### III. PLEA TO THE JURISDICTION

#### A. STANDARD OF REVIEW

A trial court's ability to hear a case lies in its subject-matter jurisdiction. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may be used to assert governmental immunity[3] and defeat a court's subject-matter jurisdiction. *Id.* A

---

[3]Public junior colleges, such as TCCD, are political subdivisions of the state and enjoy governmental immunity. *See* Tex. Educ. Code Ann. § 130.201; Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B).

6

trial court's ruling on a plea to the jurisdiction is reviewed de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just as the trial court must do. *Tex. Depot of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Bland*, 34 S.W.3d at 555. If the evidence creates a fact question on the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the factfinder will resolve the question. *Miranda*, 133 S.W.3d at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228. This standard follows our summary judgment standard of review, where we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009).

## B. APPLICABLE LAW

The TCHRA prohibits an employer from discharging an individual "because of race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code Ann. § 21.051(1). An employer commits an unlawful employment practice under the statute if the employee's sex was "a motivating factor" for the practice, "even if other factors also motivated the practice." *Id.* § 21.125(a). The TCHRA waives governmental immunity from suit, but only if the plaintiff alleges facts that would

7

establish a violation of the TCHRA "and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation." *Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020).

A plaintiff can establish discrimination under the TCHRA in two ways. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476–77 (Tex. 2001). First, an employee can offer direct evidence of the employer's discriminatory actions or words. *Id.* at 476. "Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."[4] *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 392 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (quoting *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.)). Alternatively, because direct evidence of discrimination or retaliation is a "rarity" in employment cases, courts allow claims to proceed with indirect or circumstantial evidence of discrimination or retaliation. *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Under this second method, Texas courts follow the burden-shifting mechanism set forth by

---

[4]"If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the [adverse] employment decision, the evidence is circumstantial, not direct." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 433 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). (quoting *Jespersen*, 390 S.W.3d at 653–54.

the United States Supreme Court in *McDonnell Douglas*.[5]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973); *Glover*, 436 S.W.3d at 392.

Under the *McDonnell Douglas* framework, as applied to the TCHRA,[6]

> (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case, (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action, and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext.

*Flores*, 612 S.W.3d at 305; *see Ames*, 605 U.S. at 308, 145 S. Ct. at 1545 (setting out the traditional *McDonnel Douglas* framework).

## IV.  DISCUSSION

### A.  PRIMA FACIE CASE

TCCD contends that Chavez cannot establish a prima facie case of sex discrimination.  To establish a prima facie case of sex discrimination under the

---

[5]Based on the concurrence in *Ames v. Ohio Department of Youth Services*, Chavez asserts that *McDonnell Douglas* is outdated and should be discarded in favor of the simple Texas summary judgment standard.  *See* 605 U.S. 303, 326, 145 S. Ct. 1540, 1555 (2025) (Thomas, J. concurring).  We decline the invitation to do so because when a plaintiff's claims rely on circumstantial evidence, the established method for adjudicating these claims in Texas courts is the *McDonnell Douglas* framework.  *See Mission Consol. ISD v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012); *Tex. Tech Univ. Health Scis. Ctr.-El Paso*, 612 S.W.3d at 305 ("[W]e follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*.").

[6]Analogous federal statutes and the cases interpreting them can guide our reading of the TCHRA.  *Mission Consol.*, 372 S.W.3d at 634

TCHRA, Chavez must provide evidence showing that he (1) was a member of the protected class (male); (2) was qualified for the position; (3) suffered a final, adverse employment action; and (4) was either (a) replaced by a female or (b) otherwise treated less favorably than others similarly situated but outside the protected class. *Flores*, 612 S.W.3d at 305. Under the *McDonnell Douglas* framework,[7] as applied to the TCHRA, Chavez is entitled to a presumption of discrimination if he meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Mission Consol.*, 372 S.W.3d at 634.

The first three elements are undisputed. The controversy in this case arises from the fourth element—that Chavez was treated less favorably than similarly situated female employees. The Supreme Court of Texas has concluded that "[e]mployees are similarly situated if their circumstances are comparable in all material respects." *Ysleta ISD v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam).

---

[7]Chavez contends that he produced direct evidence of sex discrimination, thus dispensing with the need for this court to perform a *McDonnell Douglas* burden-shifting analysis. Direct evidence includes "a statement or written document showing discriminatory motive on its face." *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990). Chavez has not provided any statement, written document, or similar piece of evidence that shows such clear intent of sex discrimination. Although he argues that Gerard's treatment as compared to his treatment is direct evidence of sex discrimination, that evidence is circumstantial—not direct—as it would require us to make inferences. *Donaldson*, 495 S.W.3d at 433. Because he did not proffer direct evidence to support a prima facie case of sex discrimination, we must apply the circumstantial-evidence burden-shifting analysis from *McDonnell Douglas*.

Chavez identified Gerard[8]—a female employee who he alleged was situated similarly to him. Gerard was a female TCCD employee who "worked in the same position, for the same supervisors, and engaged in the same conduct at the same time." Yet despite both having violated the same policy on the same day, Chavez's employment was terminated on July 10, 2023, while Gerard's employment was not terminated until December 11, 2023.

TCCD contends that—although Gerard was a similarly situated female employee—she was not treated more favorably because her employment was also terminated. Consequently, TCCD asserts that Chavez failed to identify a comparator who was treated more favorably in support of his prima facie case. We disagree.

Although Gerard's employment was ultimately terminated, five months elapsed between TCCD's termination of Chavez's employment and its termination of Gerard's employment. In other words, despite having violated the same policy on the same day, Gerard retained her employment for several months while Chavez lost his employment. The timing of Chavez's termination compared to Gerard's is evidence that Chavez—the male employee—was treated less favorably than an identically situated female employee.

---

[8]Chavez also identified two other females—a TCCD student and another TCCD employee—who he claimed were similarly situated. However, we do not consider either as similarly situated employees because the first was not a TCCD employee, and thus not subject to the TCCD policy at issue, and the second did not make a recording in violation of the policy.

11

Therefore, because Chavez has produced some evidence that he was treated less favorably than a similarly situated female employee and because TCCD does not challenge any of the other elements, we conclude that Chavez has met his minimal initial burden to create a presumption of discrimination by establishing a prima facie case of sex discrimination. *Flores*, 612 S.W.3d at 305; *Mission Consol.*, 372 S.W.3d at 634.

### B. LEGITIMATE, NONDISCRIMINATORY REASON

With Chavez's establishment of a prima facie case, the burden then shifted to TCCD to rebut that presumption by providing a legitimate, nondiscriminatory reason for terminating Chavez's employment. *See Flores*, 612 S.W.3d at 305; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 2748 (1993) (stating that the defendant has the burden of production to introduce evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action).

TCCD provided one reason: Chavez made "an audio recording of his co-worker, Dayna Gerard, without her consent in violation of DH (Local) – Employee Standards of Conduct."

Accordingly, we conclude that TCCD has carried its burden of production to rebut the presumption of discrimination established by the prima facie case by setting forth a legitimate, nondiscriminatory reason for terminating Chavez's employment.

## C. EVIDENCE OF PRETEXT

Because TCCD produced a legitimate, nondiscriminatory reason for terminating Chavez's employment, the burden shifted back to Chavez to point to evidence demonstrating that TCCD's stated reason is a mere pretext. *See Flores*, 612 S.W.3d at 305.

Chavez bore the burden of raising a fact question on the issue of whether TCCD's stated reason for terminating his employment was a mere pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000); *see Miranda*, 133 S.W.3d at 227–28. To raise a fact issue as to whether the employer's stated reason is a pretext—false or not credible—the plaintiff may present evidence that the reason is not the true reason or is "unworthy of credence." *City of Richland Hills v. Childress*, No. 02-20-00334-CV, 2021 WL 4205013, at *6 (Tex. App.—Fort Worth Sept. 16, 2021, pet. denied) (mem. op.) (quoting *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106). "An employee may show that the employer's reason is a mere pretext 'by revealing weaknesses, implausibilities, inconsistencies, or contradictions' in the evidence." *Id.* (quoting *Tex. Dep't of Transp. v. Flores*, 576 S.W.3d 782, 794 (Tex. App.—El Paso 2019, pet. denied)). "A plaintiff can avoid summary judgment if the evidence, taken as a whole, creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and creates a reasonable inference" that the employer acted with the intent to discriminate

13

or retaliate. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

As evidence of TCCD's stated reason being a mere pretext, Chavez points to the fact that he and Gerard—although having violated the same policy—were treated differently in terms of the length of their employment. The timeline of when TCCD became aware of Gerard's violation and the delay in the termination of her employment gives rise to a genuine issue of material fact.

We will first discuss the undisputed facts. Chavez and Gerard each recorded their conversation without the other's knowledge or consent. TCCD has a policy that prohibits its employees from recording conversations of other coworkers without their consent.[9] Chavez's employment was terminated in July 2023, and Gerard's employment was terminated in December 2023.

We next discuss disputed facts. Chavez asserts that TCCD was aware of Gerard's violation when it terminated his employment. In support of this position, he points to Gerard's interview with the Title IX investigator. In that interview on

---

[9]Chavez takes issue with the validity of TCCD's "no recording" policy. He notes that "[t]he policy provided by TCCD in support of its [m]otion is incomplete, unsigned by Chavez, and purports to have been issued on May 17, 2024, and adopted on June 27, 2024, long **after** Chavez's termination." He further asserts that it is unclear if another version of this policy was in place at the time of Chavez's termination, if other sections of the standards of conduct indicate whether the codes of conduct apply to conduct taking place during an employee's personal time or off premises, or if Chavez ever acknowledged receipt of such a policy.

14

April 28, 2023, she told the Title IX investigator—who was working for TCCD's Title IX Office—that she had recorded a conversation between her and Chavez.

TCCD, however, denies that it was aware of Gerard's recording because her statement to the Title IX investigator was inadvertently omitted from the initial investigative summary. TCCD maintained in its motion to dismiss that it did not learn of Gerard's violation until September 29, 2023, and that upon discovering the violation, it terminated her employment under the same policy that it used to terminate Chavez's employment.

Chavez argues that TCCD cannot deny its knowledge that Gerard had recorded him without his consent when it had that information during its initial investigation—the same investigation that resulted in the termination of his employment for making the same recording. Because Chavez's employment was terminated following TCCD's investigation, but Gerard's employment was not terminated until December 11, 2023, Chavez contends that TCCD inconsistently enforced the policy because it did not terminate Gerard's employment when it was aware that she had violated the same policy. He maintains that although Gerard's employment was ultimately terminated, it was (1) only after he had initiated his EEOC complaint, (2) many months after she had committed the policy violation, and (3) merely an attempt by TCCD to make the termination of his employment appear less discriminatory. Chavez argues that TCCD's selective enforcement of its policy "is not an honest explanation" for the termination of his employment and that there

15

are apparent inconsistencies that create credibility concerns. Thus, he contends that he established TCCD's stated reason for the termination of his employment was false or unworthy of credence.

In response, TCCD claims that "timing alone is insufficient to create a fact issue on pretext, especially where the record shows TCCD HR was unaware of [Gerard's] violation when it terminated [Chavez]." We are unpersuaded by this argument. First, TCCD has cited no authority to support its contention that "timing alone is insufficient to create a fact issue on pretext." *Cf. Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir.2001) ("[T]he combination of suspicious timing with other significant evidence of pretext[ ] can be sufficient to survive summary judgment."). Second, exactly when TCCD's Human Resources became aware of Gerard's violation is in dispute. Chavez alleges that TCCD was aware of Gerard's violation on April 28, 2023, and TCCD claims that it did not discover her violation until September 29, 2023. The question of when TCCD became aware of Gerard's violation is the crux of Chavez's claim of disparate treatment, and it gives rise to a fact issue.

We conclude that the fact that Gerard was permitted to remain in her position even after the stated terminable offense—while Chavez's employment was promptly terminated—raises some "weaknesses, implausibilities, inconsistencies, or contradictions" in the evidence and, thus, is some evidence of pretext. *See Flores*, 576 S.W.3d at 794. We hold that this evidence is sufficient to raise a genuine issue of material fact as to whether TCCD's stated reason for terminating Chavez's

16

employment was not true but instead was a mere pretext for discrimination or retaliation.[10]

TCCD's plea to the jurisdiction challenging the existence of jurisdictional facts did not put Chavez to the ultimate burden of proving his claims at this stage in the case; rather, he only needed to raise a fact issue on the existence of a TCHRA violation. *See Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 785 (Tex. 2018). Taking as true all evidence favorable to Chavez and indulging every reasonable inference and resolving any doubts in his favor, as we must, we hold that the trial court did not err by denying TCCD's motion to dismiss. *See Miranda*, 133 S.W.3d at 227–28. We overrule TCCD's sole issue.

## V. CONCLUSION

Having overruled TCCD's sole issue, we affirm the trial court's order denying the motion to dismiss.

/s/ Brian Walker

Brian Walker
Justice

Delivered: October 9, 2025

---

[10]Based on our disposition, we need not consider TCCD's argument that it provided evidence of otherwise consistent enforcement of its unauthorized-recording policy in other departments. *See* Tex. R .App. P. 47.1.