

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00334-CV

_____

CITY OF RICHLAND HILLS, TEXAS, Appellant

V.

BARBARA CHILDRESS, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-305366-19

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellee Barbara Childress, former police chief of Appellant City of Richland Hills, Texas, sued the City for age discrimination after the City terminated her employment. In this accelerated appeal,[1] the City complains that the trial court erred by denying its motion for summary judgment that asserted a plea to the jurisdiction and challenged Childress's damages claim for lost wages. Because Childress provided sufficient evidence to raise a fact question on her age-discrimination claim, and because the City fails to show that evidence of compensable lost wages is a jurisdictional prerequisite to this suit, the trial court did not err by denying the City's plea to the jurisdiction. Therefore, we affirm the trial court's order to the extent that it denied dismissal of Childress's age-discrimination claim for want of jurisdiction.

### II. BACKGROUND

After serving nearly thirty-four years as the City's Chief of Police, Childress was fired on March 29, 2018, at age sixty-nine and replaced by an employee who was twenty-five years younger.[2] Childress filed a charge of discrimination with the Texas Workforce Commission, received a notice of right to sue, and then filed the underlying suit against the City in January 2019, claiming age discrimination and

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); Tex. R. App. P. 28.1(a).

[2]In total, Childress had worked for the City for forty-eight years; before becoming police chief, Childress had also worked as a police dispatcher and a police officer.

retaliation in violation of Chapter 21 of the Texas Labor Code. *See* Tex. Lab. Code Ann. §§ 21.051, .055. The City subsequently filed a motion for summary judgment, asserting a plea to the jurisdiction based on governmental immunity from suit under the Texas Labor Code because it contended that Childress had no evidence to support all elements of her claims.[3] As part of its plea, the City attached several exhibits, including Childress's deposition transcript and the affidavit of City Manager Eric Strong.

Childress claimed that she had always received above-average performance evaluations during her tenure as Chief of Police and had never received any criticism of her job performance from her superiors until November 2017, when a police department employee filed a formal grievance alleging that Childress had discriminated against males in her recent hiring decisions. Strong, Childress's supervisor, promptly began an internal investigation into the grievance. Strong notified Childress of the discrimination complaint against her on December 4, 2017, and told Childress not to discuss the investigation with anyone other than her

---

[3]While the City used the term "sovereign immunity" both in its motion for summary judgment and in its brief on appeal, we use the term "governmental immunity" because this is the type of immunity that protects political subdivisions of the state—including cities—when they perform governmental functions. *See City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 240 (Tex. App.—Fort Worth 2018, pet. denied). The concepts are similar: cities derive their immunity from the state, so a city's immunity extends as far as the state's immunity when the city is acting as a branch of the state. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 436 (Tex. 2016).

attorney. Childress signed a written acknowledgement that stated, "I have been ORDERED not to discuss this internal investigation with anyone, other than my attorney, including but not limited to witnesses. I have further been ORDERED not to authorize others on my behalf to initiate discussion with witnesses." Three days later, Strong provided Childress with an amended complaint adding an allegation that Childress had retaliated against employees for taking leave protected by the Family Medical Leave Act, and Childress again signed an acknowledgment of the order not to discuss the investigation with anyone other than her attorney.

Despite these orders, Childress talked to the police department's senior sergeant about the details of his job position, which had been created as part of the department's reorganization that also had involved Childress's hiring decisions challenged by the grievance. Although Childress did not believe that this discussion was related to the investigation into the complaints against her, Strong disagreed. According to Strong, Childress told him that she had also spoken about the investigation to at least one other person who was not affiliated with the City, but she would not say who it was because "she had assured the people she had talked to that she would maintain confidentiality about their identity." Strong testified in his affidavit that at that time, in early December 2017, he thought that he and Childress did not have a "high level of mutual trust" and that their working relationship had been "irreparably damaged" by her conduct.

4

Strong did not make a formal finding or take any disciplinary action against Childress regarding the grievance at that time, but he told Childress that he did not want her to continue serving as the City's police chief. Childress was nearing completion of an accreditation project for the police department with the Texas Police Chiefs Association, which she told Strong she thought she would finish by March 2018. Therefore, Strong told Childress that if she did not either resign or retire by the end of March 2018, he would "involuntarily end her employment with the City."

Strong eventually completed his investigation into the grievance against Childress in late December 2017 or early January 2018, and he determined that the complaints were "not sustained or could not be substantiated." A few weeks later, Childress sent a memo to Strong on February 27, 2018, stating, "I am asking you to reconsider your decision to let me go. I am ready and able to continue serving as the Chief of Police of Richland Hills and desire to do so." Childress sent Strong another memo a week later reiterating her desire to stay on with the City as Chief of Police. Strong rejected Childress's request and asked Childress again either to resign or retire by the end of March 2018.

When Childress did not give her two-week notice of resignation or retirement, Strong filed his own complaint against Childress on March 16, 2018. In this complaint, Strong alleged that Childress had violated City policy by discussing confidential internal investigations, failing to cooperate with an investigation, and

5

having "impeded and tainted the investigation by refusing to disclose to the City Manager with whom she discussed confidential information." Strong charged that these actions amounted to insubordination and failure to follow a lawful order from the City Manager.

Although Childress denied these allegations, Strong issued written findings on March 26, 2018, that sustained his claims against Childress. In the findings, Strong stated that Childress had admitted to discussing the internal investigation with two people in addition to the senior sergeant but that she also had talked to "at least two other people" whose identities she did not disclose.[4] Strong notified Childress that a disciplinary hearing would be held two days later and warned her that he was considering terminating her employment.

Childress vigorously contested Strong's findings in a written response, asserting that she had not talked to the senior sergeant about the investigation; that a person had told her "what they were hearing" about the investigation but that Strong never gave Childress a direct order to divulge that person's identity; and that she had informed the two police captains, her seconds-in-command, about the investigation

---

[4]According to Strong, the City's two police captains told him that Childress "had discussed everything about the December 2017 investigation" with them, including showing them a copy of the December 2017 complaints. The captains both said that they had learned about the investigation from Childress "almost immediately" after it had begun.

6

only in connection with the captains' supervisory job duties, and she had told Strong that she had done so. Childress concluded,

> As a tenured chief with 34 years of experience at Richland Hills, with [an] unblemished record, I am acutely aware of my responsibilities and have done nothing to taint this investigation and certainly nothing that would rise to the level of termination. Using my best judgment as a tenured chief and fully understanding the circumstances of which I was faced, I acted in an appropriate manner by [e]nsuring that the leadership of the department understood the issues we were facing so that we could make accurate and reasoned decisions during a tumultuous time. Had I done otherwise I would have been derelict in my duties to the community and to the employees of the department.

Despite Childress's protests, Strong fired Childress the next day.

Based on these facts, the City sought dismissal, asserting that Childress had not established a waiver of the City's immunity from suit because she had no evidence to support all elements of her claims and that she had no compensable lost wages as a matter of law. After Childress filed a response and after a hearing, the trial court dismissed Childress's retaliation claim but not her age-discrimination claim. The City now appeals.

### III. DISCUSSION

In two issues, the City contends that the trial court erred by denying part of its motion for summary judgment—first, because the City's plea to the jurisdiction established that Childress had not carried her burden to show that the City had waived its governmental immunity, and second, because Childress's current wages and retirement-account payments must be offset against her damage claims for lost

7

pay.  The City argues that because Childress receives retirement payments from the City in addition to her wages from a new job, which together exceed the compensation she had received from the City, she has suffered no economic damages as a matter of law.

## A. Plea to the Jurisdiction

### 1. Standard of Review

A trial court's ability to hear a case lies in its subject-matter jurisdiction.  *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  "A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction."  *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).  A plea to the jurisdiction may be used to assert governmental immunity and defeat a court's subject-matter jurisdiction.  *Id.*  A trial court's ruling on a plea  to  the jurisdiction is reviewed de novo.  *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just as the trial court must do.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Bland*, 34 S.W.3d at 555.  If the evidence creates a fact question on the jurisdictional issue, then the trial court cannot grant the plea  to  the  jurisdiction,  and  the  factfinder  will  resolve  the question.   *Miranda*, 133 S.W.3d at 227–28.  But if the relevant evidence is

8

undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228. This standard follows our review of summary judgments, where we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009).

### 2. Applicable Law

Childress's age-discrimination claim falls under the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code Ann. § 21.051. The TCHRA prohibits an employer from discharging an individual "because of race, color, disability, religion, sex, national origin, or age."[5] *Id.* § 21.051(1). An employer commits an unlawful employment practice under the statute "because of" an employee's age if the employee's age was "a motivating factor" for the practice, "even if other factors also motivated the practice." *Id.* § 21.125(a). The TCHRA also waives governmental immunity from suit, but only if the plaintiff alleges facts that would establish a violation of the TCHRA "and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to

---

[5]The TCHRA's protection against age discrimination applies to individuals aged forty years or older. *See* Tex. Lab. Code Ann. § 21.101.

that allegation." *Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020).[6]

A plaintiff can establish discrimination under the TCHRA in two ways. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476–77 (Tex. 2001). First, an employee can offer direct evidence of the employer's discriminatory actions or words. *Id.* at 476. "Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 392 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (quoting *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.)). Alternatively, because direct evidence of discrimination or retaliation is a "rarity" in employment cases, courts allow claims to proceed with indirect or circumstantial evidence of discrimination or retaliation. *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Under this second method, which applies in this case, Texas courts follow the burden-shifting mechanism set forth by the United States Supreme Court in *McDonnell*

---

[6]*See also Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 763 (Tex. 2018) ("By intertwining the TCHRA's immunity waiver with the merits of a statutory claim, the Legislature ensures public funds are not expended defending claims lacking sufficient evidence to allow reasonable jurors to find the governmental entity liable.").

*Douglas*.[7]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973); *Glover*, 436 S.W.3d at 392.

Under the *McDonnell Douglas* framework, as applied to the TCHRA,

(1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case, (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action, and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext.

*Flores*, 612 S.W.3d at 305.  The City's first issue, contending that Childress neither established a prima facie case of discrimination nor produced evidence of pretext that overcame the City's proffered reasons for her firing, challenges elements one and three of this framework.  The City argues that, consequently, Childress failed to raise a fact question regarding whether the City waived its immunity, and the trial court erred by denying the City's plea to the jurisdiction.

### 3.  Application of Law to Facts

#### a.  Prima Facie Case

To establish a prima facie case of age discrimination under the TCHRA, the plaintiff must provide evidence showing that she (1) was a member of the protected class (forty years of age or older); (2) was qualified for the position; (3) suffered a final, adverse employment action; and (4) was either (a) replaced by someone

---

[7]Analogous federal statutes and the cases interpreting them can guide our reading of the TCHRA.  *Mission Consol. ISD v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012).

significantly younger or (b) otherwise treated less favorably than others similarly situated but outside the protected class. *Flores*, 612 S.W.3d at 305. Under the *McDonnell Douglas* framework, as applied to the TCHRA, the plaintiff is entitled to a presumption of discrimination if the plaintiff meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Mission Consol.*, 372 S.W.3d at 634.

The City first argues that Childress did not establish a prima facie case because there was no evidence that her age was a motivating factor for the termination. But evidence of age as a motivating factor is not an element of the prima facie case; rather, it is the result. In other words, the plaintiff's establishment of a prima facie case leads to the inference that age is a motivating factor for the adverse employment decision because courts presume that the defendant's acts, if otherwise unexplained, are more likely than not motivated by impermissible factors such as age. *See id; see also Flores*, 612 S.W.3d at 308 (stating that the prima facie case "justif[ies] a presumption that the plaintiff was removed 'because of' her protected status").

The City also argues that there was no evidence of the fourth element of a prima facie case—that Childress was treated less favorably than similarly situated employees under forty. But a plaintiff can establish the fourth element by showing that she was *either* (a) replaced by someone significantly younger *or* (b) otherwise treated less favorably than others similarly situated but outside the protected class. *See Flores*, 612 S.W.3d at 305, 310 (stating that evidence of less favorable treatment is an "alternative method" of establishing a prima facie case when the plaintiff cannot show

12

that she was replaced by someone significantly younger). The City does not dispute that Childress was replaced by a forty-four-year-old employee or that the twenty-five-year age difference made the replacement employee "significantly younger" than Childress.

Therefore, because Childress has produced some evidence that she was replaced by someone significantly younger, and because the City does not challenge any other elements, we conclude that Childress has met her minimal initial burden to create a presumption of discrimination by establishing a prima facie case. *See id.* at 305; *Mission Consol.*, 372 S.W.3d at 634; *see also San Benito Consol. ISD v. Cruz*, No. 13-20-00310-CV, 2021 WL 921793, at *7 (Tex. App.—Corpus Christi Mar. 11, 2021, no pet.) (mem. op.) (concluding that a sixty-eight-year-old employee who was replaced by a forty-nine-year-old employee raised a fact issue as to whether she was replaced by someone significantly younger, which sufficiently established a prima facie case of age discrimination).

### b. Legitimate, Nondiscriminatory Reason

With Childress's establishment of a prima facie case of age discrimination, the burden then shifted to the City to rebut that presumption by providing a legitimate, nondiscriminatory reason for terminating Childress's employment. *See Flores*, 612 S.W.3d at 305; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 2748 (1993) (stating that the defendant has the burden of production to introduce evidence that, taken as true, would permit the conclusion that there was a

13

nondiscriminatory reason for the adverse action). The City provided several reasons: Childress violated Strong's confidentiality orders, Childress refused to identify the people she had spoken to about the investigation, Childress and Strong had no mutual trust in each other, and Childress's failure to maintain the confidentiality of the investigation caused dissension within the police department. In short, the City contends that Childress's insubordination constituted a legitimate, nondiscriminatory reason for Strong's decision to fire Childress. *See Collier v. Dall. Cty. Hosp. Dist.*, 827 Fed. App'x 373, 376 (5th Cir. 2020), *cert. denied*, No. 20-1004, 2021 WL 1952066 (U.S. May 17, 2021); *Kaplan v. City of Sugar Land*, 525 S.W.3d 297, 308 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Citing *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 138 (Tex. App.—Corpus Christi 1986, writ denied), Childress briefly challenges the City's violation-of-confidentiality grounds for her termination by stating that the officers who were being investigated had no right to privacy regarding their investigation. But the court in *Jacobs* held only that the record contained no evidence of a violation of an employee's federally protected right of privacy—not that there was no such right. *Id.* Childress does not explain why the violation of confidentiality orders pertaining to ongoing workplace investigations could not qualify as a legitimate, nondiscriminatory reason for termination. *See City of San Antonio ex rel. City Pub. Serv. Bd. v. Gonzalez*, No. 04-08-00829-CV, 2009 WL 4981332, at *3 (Tex. App.—San Antonio Dec. 23, 2009, pet. denied) (mem. op.) (employee terminated for disclosing confidential information to

14

another employee); *cf. Cruz v. Howard Cty.*, No. Civ.A. 1:03-CV-107-C, 2004 WL 1585712, at \*5 (N.D. Tex. July 15, 2004) (order) (employee terminated for releasing confidential information in an ongoing criminal investigation involving her relatives). Accordingly, we conclude that the City has carried its burden of production to rebut the presumption of discrimination established by the prima facie case by setting forth legitimate, nondiscriminatory reasons for terminating Childress's employment.

### c. Evidence of Pretext

Because the City produced legitimate, nondiscriminatory reasons for Childress's termination, the burden shifted back to Childress to point to evidence demonstrating that the City's stated reasons are a mere pretext. *See Flores*, 612 S.W.3d at 305. To defeat the City's plea to the jurisdiction, Childress bore the burden of raising a fact question on the issue of whether the stated reasons are the City's true reasons for terminating Childress and whether the City's "proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000); *see Miranda*, 133 S.W.3d at 227–28. An employee may show that the employer's reason is a mere pretext "by revealing weaknesses, implausibilities, inconsistencies, or contradictions" in the evidence. *Tex. Dep't of Transp. v. Flores*, 576 S.W.3d 782, 794 (Tex. App.—El Paso 2019, pet. denied).

First, Childress points to her long history of good performance with the police department as evidence that the City's reasons for terminating her were pretextual. Childress said that she had never been disciplined the entire thirty-four years that she

served as Chief of Police, and she had received positive evaluations throughout her career from all the city managers who had supervised her. When an employer points to an employee's poor performance as a reason for an adverse employment decision, contradictory evidence that an employer is satisfied with an employee's work performance can serve as evidence of pretext. *See Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 915 (Tex. App.—Fort Worth 2018, pet. denied). The City argues that any evidence of Childress's prior good performance is irrelevant because Childress was fired for insubordination, not poor performance. We conclude that under these facts, this is a distinction without a difference: Childress's alleged insubordination occurred in the performance of her job duties, and the City points us to no evidence that Childress had ever been counseled about, or disciplined for, insubordination prior to Strong's complaint.

In addition, Childress identifies the City's delay in acting on her alleged insubordination as evidence of pretext. Childress argues that if her stated insubordination had caused "irreparable harm" to her working relationship with Strong, as the City claimed, then the City would have immediately investigated and terminated her employment rather than waiting over three months to take any action. The City's delay, Childress contends, is some evidence that the stated reason of insubordination was unworthy of credence.

In support, Childress cites *Peirick v. Indiana University–Purdue University Indianapolis Athletics Department*, 510 F.3d 681, 692 (7th Cir. 2007), in which a university

16

terminated one of its tennis coaches for the stated reason of unprofessional conduct: the coach used abusive language with students, left a van of students behind on an out-of-state road trip, was an unsafe driver, and told students that the university administration was to blame for scheduling conflicts. But even after becoming aware of these complaints, the coach's supervisor did not address these concerns with the coach but instead allowed her to continue performing her job—including continuing to drive the team to tournaments—for another two months before terminating her employment. *See id.* at 692–93. In concluding that a fact question existed on the issue of pretext, the reviewing court stated that this "pattern of delay" raised a question whether the university was truly concerned about the coach's stated unprofessional conduct. *Id.* at 693.

Similarly, in *Daoud v. Avamere Staffing, LLC*, 336 F. Supp. 2d 1129, 1132–33 (D. Or. 2004), a retirement-home-staffing company fired a "personal care aid" after receiving numerous complaints from clients regarding the aid's patient care. The staffing company never told the aid about any of the complaints or warned her about her job performance, and it allowed her to continue providing care for a client even after that client complained. *See id.* at 1137. The court concluded that an issue of fact was raised regarding whether the complaints actually triggered the aid's termination. *Id.*

The City responds that Strong immediately confronted Childress when he became aware of her alleged insubordination and that the delay in termination was

17

explained by the fact that Childress was allowed to remain in her position for a few more months to complete the certification project, at her request. Citing *Jackson v. General Motors, LLC*, No. 4:18-CV-1243 RLW, 2020 WL 3469334 (E.D. Mo. June 25, 2020), and *Allen v. Wal-Mart Stores, Inc.*, No. 1:10cv42-SPM/GRJ, 2011 WL 13228323 (N.D. Fla. Apr. 15, 2011), the City argues that there is no evidence of pretext when the employer presents a reasonable explanation for the delay and when that delay was, at least in part, a result of the employee's own actions.

In *Jackson*, the employer's stated reason for terminating its employee was an unexcused absence, but the employer did not actually terminate the employee until six months after the absence occurred. 2020 WL 3469334, at *31. The court determined that the delay did not establish an issue of fact as to pretext because the employer's policy was to administer all discipline in person, but the employee did not return to work until over two months after his unexcused absence; furthermore, the employer delayed termination for several more months to give the employee time to obtain documentation from his physician to show that his absence was actually excused. *See id.* And in *Allen*, the court held that a two-month delay between the employee's misconduct and her termination was not evidence of pretext because the employee's new supervisor was in the process of moving in from another state, and by the time the supervisor began "hands on management," the employee had already begun to take several weeks of approved leave. 2011 WL 13228323, at *4. When the employee

18

returned to work, her new supervisor immediately began an investigation into her misconduct and then terminated her employment. *See id.*

Here, the City claims that it has provided a reasonable explanation for the delay because Childress requested, and the City allowed, a few more months for her to finish her accreditation project with the Texas Police Chiefs Association. But the City points to no evidence that it relieved Childress of her duties as police chief during this time or that she remained on staff only to work on the accreditation project that she had requested time to finish. Rather, it appears that Childress continued to perform all aspects of her job—despite the claimed "irreparable harm" caused by her insubordination—for another three months before the City terminated her employment. There is no evidence that Childress could not have been disciplined earlier because she was absent from work during this time, or that the City was allowing her extra time to gather evidence to explain, refute, or remedy her allegedly insubordinate conduct. We conclude that here, like in *Peirick* and *Daoud*, the fact that Childress was allowed to remain in her position and apparently perform her job duties even after the stated fireable offense raises some "weaknesses, implausibilities, inconsistencies, or contradictions" in the evidence and, thus, is some evidence of pretext. *See Tex. Dep't of Transp.*, 576 S.W.3d at 794. We hold that this evidence, along with evidence of Childress's long history of good performance with the City's police department, is sufficient to raise a genuine issue of material fact as to whether the

19

City's stated reasons for firing Childress were not true but instead were a pretext for discrimination.[8]

All in all, the City's plea to the jurisdiction challenging the existence of jurisdictional facts did not put Childress to the ultimate burden of proving her claims at this stage in the case; rather, she only needed to raise a fact issue on the existence of a violation of the TCHRA. *See Alamo Heights*, 544 S.W.3d at 785. Taking as true all evidence favorable to Childress and indulging every reasonable inference and resolving any doubts in her favor, as we must, we hold that the trial court did not err by denying the City's motion for summary judgment asserting a plea to the jurisdiction on Childress's claim of age discrimination. *See Miranda*, 133 S.W.3d at 227–28. We overrule the City's first issue.

## B. Wages Claim

In its second issue, the City argues that the trial court erred by denying the portion of the City's motion for summary judgment that challenged Childress's requested recovery of lost wages. The City asserts on appeal that its governmental immunity is waived only for compensable economic losses and that because the amount of Childress's lost wages (both back pay and front pay) was fully offset by the amounts she has received from her current employment and her City-provided

---

[8]Because we hold that this evidence is sufficient to raise a fact issue, we need not discuss the City's challenges to other evidence raised by Childress in support of pretext. *See* Tex. R. App. P. 47.4.

retirement account,[9] Childress suffered no economic losses. *See* Tex. Lab. Code Ann. § 21.258(c) (providing that an employee's "[i]nterim earnings . . . operate to reduce the back pay otherwise allowable" to the employee upon a finding that the employer engaged in an unlawful employment practice).

However, the City did not present this governmental-immunity argument to the trial court; in its motion for summary judgment, the City argued only that if the case proceeded to trial, the court should rule that Childress was not entitled to receive lost wages. But because the defense of governmental immunity implicates the trial court's subject-matter jurisdiction to hear the case, the City may raise this argument for the first time on appeal. *See Manbeck v. Austin ISD*, 381 S.W.3d 528, 530 (Tex. 2012).

Even though the City may raise governmental immunity in this appeal, the cases that the City cites in support of its argument that its immunity was not waived are inapposite. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 330–31 (Tex. 2006); *Zachry Constr. Corp. v. Port of Hous. Auth.*, 449 S.W.3d 98, 105–06 (Tex. 2014); *City of Colleyville v. Newman*, No. 02-15-00017-CV, 2016 WL 1314470, at *1 (Tex. App.— Fort Worth Mar. 31, 2016, pet. denied) (mem. op.). In each of these cases, the plaintiff brought a breach-of-contract claim against a local government entity based upon the statutory waiver in Local Government Code Section 271.152, which

---

[9]The City provided retirement benefits to its employees through the Texas Municipal Retirement System.

"waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract," subject to certain statutory conditions. Tex. Loc. Gov't Code Ann. § 271.152.

One of these statutory conditions is that damages are limited to the balance due under the contract, the amount owed for change orders or additional work performed, attorney's fees, and interest; a plaintiff may not recover damages for consequential damages, exemplary damages, or damages for unabsorbed home-office overhead. *See id.* § 271.153(a)–(b). The cases cited by the City stand for the proposition that unless a plaintiff suing a local government entity for breach of contract seeks recovery for damages for which the entity's immunity is specifically waived by the Local Government Code, the trial court has no jurisdiction over the plaintiff's claim. *See Tooke*, 197 S.W.3d at 346; *Zachry Constr. Corp.*, 449 S.W.3d at 110; *City of Colleyville*, 2016 WL 1314470 at *5. Here, however, the Local Government Code's limitation on the waiver of immunity has no applicability to Childress's claim because Childress has not sued the City for breach of contract.

Instead, Childress's lawsuit alleges age discrimination in violation of the TCHRA. *See* Tex. Lab. Code Ann. § 21.051. The TCHRA waives immunity by providing that, after satisfying certain administrative requirements, "the complainant may bring a civil action." *Id.* § 21.254; *see Alamo Heights*, 544 S.W.3d at 770. Accordingly, to show that this waiver of immunity applies, the plaintiff in an age-discrimination case must allege facts that would establish a violation of the TCHRA:

22

that the employer discriminated against the plaintiff "because of" his or her age. Tex. Lab. Code Ann. § 21.051; *see Alamo Heights*, 544 S.W.3d at 770. As we have concluded in our discussion of the City's first issue, Childress has alleged evidence sufficient to raise a genuine fact issue regarding her age-discrimination claim, and the City does not point to any provision of the TCHRA that additionally requires evidence of any specific type of damages to establish a waiver of immunity. Therefore, the City's complaint that Childress has failed to show evidence of lost wages is irrelevant to the question of whether the City has waived its immunity to Childress's suit. We overrule the City's second issue.[10]

---

[10]To the extent the City asks us to hold that, if the case proceeds, the trial court must offset Childress's lost wages by amounts from her current employment and City retirement, we do not have authority to reach this argument in this interlocutory appeal. This argument does not involve a challenge to the trial court's ruling on the jurisdictional issue, and the City cites no other law giving us authority to review this issue in an interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (providing that a person may appeal an interlocutory order that grants a plea to the jurisdiction by a governmental unit); *Sykes*, 136 S.W.3d at 638 (explaining that a plea to the jurisdiction seeks dismissal of a case for lack of subject-matter jurisdiction); *Liverman v. Denton Cty.*, No. 02-17-00240-CV, 2017 WL 6377437, at *1–2 (Tex. App.—Fort Worth Dec. 14, 2017, no pet.) (mem. op.) (dismissing portion of appeal from order granting jurisdictional plea that complained of the trial court's dismissal of claims against government officials in their individual capacities but addressing portion of appeal that complained of dismissal of claims against governmental unit and government officials in their official capacities); *Swanson v. Town of Shady Shores*, Nos. 02-15-00351-CV, 02-15-00356-CV, 2016 WL 4395779, at *3 (Tex. App.—Fort Worth Aug. 18, 2016, no pet.) (mem. op.) (stating that only the portions of orders denying the town's motions for summary judgment on immunity grounds were reviewable by interlocutory appeal under Section 51.014(a)(8)); *see also Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 761 n.36 (Tex. 2019) (collecting cases). Therefore, we do not address this argument.

## IV. CONCLUSION

After carefully reviewing the evidence before the trial court, we conclude that Childress produced evidence sufficient to raise a fact issue regarding whether the City waived its governmental immunity to her age-discrimination claim. We affirm the trial court's order to the extent that it denies the City's motion for summary judgment asserting a plea to the jurisdiction.

/s/ Dana Womack

Dana Womack
Justice

Delivered: September 16, 2021